FILED
Clerk
District Court

APR 13 2015

for the Northern Mariana Islands
By_____
(Deputy Clerk)

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| PAVEL SOLOVIEV,<br><br>       Plaintiff,<br><br>  v.<br><br>ALAN S. MARKOFF and<br>TOOTHWORKS, INC.,<br><br>       Defendants. | CASE NO.  1:14-cv-00019<br><br>**DECISION AND ORDER GRANTING IN<br>PART AND DENYING IN PART<br>DEFENDANTS' MOTION TO DISMISS** |

## I.    INTRODUCTION

Plaintiff Pavel Soloviev is suing Defendants Alan S. Markoff and Toothworks, Inc., to recover damages for what he alleges was a botched tooth extraction. Before the Court is Defendants' Motion to Dismiss Plaintiff's Complaint ("Motion," ECF No. 4), which is supported by a Memorandum (ECF No. 4-1). Soloviev filed an Opposition (ECF No. 7), and Defendants filed a Reply (ECF No. 10). Having considered the papers and the oral arguments of counsel, the Court denies the Motion with respect to the negligence claim, and grants it in part as to the Consumer Protection Act claim.

## II.    BACKGROUND

Markoff is a dentist who owns and operates Toothworks. (Complaint, ECF No. 1, ¶ 7.) On November 2, 2011, Markoff extracted one of Soloviev's teeth. (*Id.* ¶ 13.) Soon after the extraction, Soloviev returned to Markoff complaining of extreme pain. (*Id.* ¶ 14.) Markoff told Soloviev that the extraction had been performed correctly. (*Id.* ¶ 15.) He blamed some of the problem on Soloviev's smoking, and he prescribed antibiotics and painkillers. (*Id.*) Throughout

the rest of 2011 and 2012, Markoff assured Soloviev that there had been no problem with the procedure that Markoff had performed. (*Id.* ¶ 16.) Soloviev returned to Markoff for further treatment in January, February, August, and September 2012. (*Id.* ¶ 17.) Markoff claimed to have closed an oral antral fistula. (*Id.*) On August 24, 2012, Markoff probed the fistula and reported he had removed a foreign body located in it. (*Id.*) The sinus problem worsened, and on September 11, Soloviev again went to Markoff. (*Id.* ¶ 18.) Markoff again prescribed painkillers and antibiotics, blamed the trouble on Soloviev's smoking, and denied the dental procedures were the cause of his pain. (*Id.*)

On September 26, 2012, Soloviev went to see a dentist in Russia. (*Id.* ¶ 20.) The Russian dentist, E. D. Edranov, found a fistula leading from the mouth to the maxillary sinus cavity where the tooth had been extracted. (*Id.* ¶ 21.) The sinus was severely infected. (*Id.* ¶ 23.) On October 11, 2012, Edranov performed surgery to remove the "foreign material" from the sinus and drain the pus. (*Id.* ¶ 25.) Soloviev claims the foreign material was "introduced to his body by Toothworks and Markoff and migrated to his sinus through the fistula created by them," and that he first learned of this from Edranov (*Id.* ¶ 24.)

On August 22, 2014, more than two years after Markoff extracted Soloviev's tooth but less than two years after Markoff stopped treatment, Soloviev filed this diversity suit alleging negligence and a violation of the Consumer Protection Act.

### III.    LEGAL STANDARD

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must be dismissed if it fails to state a claim upon which relief can be granted. On a Rule 12(b)(6) motion, all well-pleaded factual allegations are taken as true. *Hebbe v. Pliler,* 627 F.3d 338, 341–42 (9th

2

Cir. 2010). Although a complaint does not need "detailed factual allegations, . . . a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (citations and internal quotation marks omitted). Legal conclusions couched as factual allegations do not suffice. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). The claim to relief must contain sufficient well-pleaded facts to be "plausible on its face." *Twombly,* 550 U.S. at 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678. The purpose of this standard is "to give fair notice and to enable the opposing party to defend itself effectively[,]" and to ensure "that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr v. Bacca,* 652 F.3d 1202, 1216 (9th Cir. 2011).

The defense that a claim is barred by the statute of limitations is also analyzed under Rule 12(b)(6). *Huynh v. Chase Manhattan Bank,* 465 F.3d 992, 996–97 (9th Cir. 2006). A claim must be dismissed on a Rule 12(b)(6) motion if "the running of the statute is apparent on the face of the complaint." *Jablon v. Dean Witter & Co.,* 614 F.2d 677, 682 (9th Cir. 1980).

**IV. DISCUSSION**

A.   <u>Soloviev's Dental-Malpractice Claim Is Not Clearly Time-Barred</u>

Defendants assert that Soloviev's negligence claim for dental malpractice is barred by the statute of limitations. The parties agree that because all of Soloviev's claims arise under the laws of the Commonwealth of the Northern Mariana Islands ("CNMI" or "Commonwealth"), the CNMI statute of limitations applies and CNMI law determines the date when the causes of action

1    accrued. Also, there is no dispute that in the Commonwealth, a dental-malpractice claim must be

2    brought within two years of accrual. (Mot. 5–6, Opp. 2.)  Whether Soloviev initiated this lawsuit

3    within the limitations period depends on when the claim accrued and whether the running of the

4    statute was tolled. Defendants assert that the claim accrued on November 2, 2011, when the tooth

5    was extracted. Soloviev contends that the claim accrued much later: when he discovered that

6    Markoff had injured him, or when Markoff stopped treating the injury, or when the Russian

7    dentist found a foreign object in the site of the tooth extraction.

8           To determine when a state-law claim like Soloviev's negligence claim accrues, the Court

9    looks to state (here, Commonwealth) law. *See Moran v. H.W.S. Lumber Co., Inc.,* 538 F.2d 238,

10   242 (9th Cir. 1976) (accepting that state law controls when statute of limitations commences on

11   contract claim); *Meyers v. Moody,* 693 F.2d 1196, 1206 (5th Cir. 1982) ("State law determines

12   when a state law cause of action accrues"). The Commonwealth Code establishes that medical-

13   malpractice actions must be brought "within two years after the cause of action accrues[.]" 7

14   CMC § 2503. The word "accrue" is not defined. When a statutory term is undefined, courts

15   should give it its plain meaning. *Estate of Faisao v. Tenorio,* 4 N.M.I. 260, 265 (1995). When

16   Commonwealth written law and local customary law are silent, Commonwealth courts apply

17   "the rules of the common law, as expressed in the restatements of the law approved by the

18   American Law Institute and, to the extent not so expressed as generally understood and applied

19   in the United States[.]" 7 CMC § 3401; *see Ada v. Sablan,* 1 N.M.I. 415, 424 (1990). The written

20   law includes Commonwealth case law. *Saipan Achugao Resort Members' Ass'n v. Yoon,* 2011

21   MP 12 ¶ 19 (N. Mar. I. 2011).

22

23

24                                              4

1           1.      *The Common Law on Accrual of Malpractice Actions*

2          According to Defendants, accrual at the time of the injury is the general common-law

3    rule, and that rule has been adopted in the Commonwealth. (Mot. 5–6.) In *Zhang v.*

4    *Commonwealth*, the Commonwealth Supreme Court wrote: "In the context of statute of

5    limitations, the term 'accrue' refers to 'when a suit may be maintained from thereon.'" 6 N.M.I.

6    322, 326 n.10 (2001) (citing *Dillon v. Bd. of Pension Comm'rs of City of Los Angeles,* 116 P.2d

7    37, 39 (Cal. 1941)). The definition of "accrue" in *Zhang* is the same as the first definition of

8    "accrue" with respect to causes of action in the fifth edition (1979) of *Black's Law Dictionary*. In

9    support of that definition, *Black's* cites to the same California case (*Dillon*) as the *Zhang* court

10   did. This, Defendants assert, was the plain meaning of "accrue" at the time the CNMI's

11   limitations statute was adopted.[1] *See United States v. Meyer,* 808 F.2d 912, 914 (1st Cir. 1987)

12   (accepting 1979 *Black's* definition as "the standard definition of the concept of accrual"); *Booth*

13   *Oil Site Admin. Group v. Safety-Kleen Corp.,* 137 F. Supp. 2d 228, 234 (W.D.N.Y. 2000)

14   (applying same definition, from *Black's* 6th ed. (1990)).

15         And yet the meaning of "accrue" in the CNMI statute is far from plain. The *Zhang*

16   footnote is dicta, not controlling authority. The case was decided on grounds wholly unrelated to

17   the accrual date, over which there was no dispute. It provides weak support, at best, for

18   Defendants' position. *See Century Ins.. Co., Ltd. v. Guerrero,* 2009 MP 16 ¶10 n.13 (N. Mar. I.

19   2009). Nor does the fifth edition of *Black's* endorse any one definition of "accrue" for causes of

20   action. It lists several definitions found in the case law of various jurisdictions, starting from the

21
---
22   [1] The Commonwealth Code was enacted in 1983 and became effective January 1, 1984. N. Mar. I. Pub. L. 3-90. The pertinent statutes on limitation of actions were imported almost verbatim from the Trust Territory Code. *Compare* 7 C.M.C. §§ 2501–2510 *and* 6 T.T.C. §§ 301–310. Since 1983, they have not
23   been amended.

24                                                5

broadest in scope (the *Dillon* definition) and ending with the most particular: "An action for malpractice against an attorney does not accrue until the client knows or should know of the attorney's error." *Black's Law Dictionary* 19 (5th ed. 1979) (citing *Hendrickson v. Sears,* 365 Mass. 83, 310 N.E. 2d 131 (1974)). Thus, *Black's* could be viewed as supporting Soloviev's position that the discovery rule of accrual is the common-law rule in malpractice actions.

2.     *The Restatement (Second) of Torts on Accrual of Malpractice Actions*

Soloviev maintains that the RESTATEMENT (SECOND) OF TORTS endorses some version of the discovery rule. Comment *e* of § 899 of the RESTATEMENT recognizes that with respect to medical-malpractice actions, many states, either by statute or by judge-made law, have abandoned the earlier rule that the injured person's knowledge of the injury is immaterial to accrual. Some states have adopted the rule that a malpractice claim does not accrue until the injury could reasonably have been discovered by the plaintiff. Others achieve a similar result by tolling the statute of limitations during a continuous course of negligent medical treatment, or when a doctor conceals the injury from the patient or, in surgery cases, leaves a foreign object in the patient's body.

A comment in a restatement, however, is not the same as a rule. Comment *e* summarizes the various accrual rules that have developed for medical-malpractice claims and explains the rationale for them, but it doesn't approve any particular rule. The law as restated in RESTATEMENT (SECOND) OF TORTS § 899 is merely this: "A cause of action for a tort may be barred through lapse of time because of the provisions of a statute of limitations." When a restatement doesn't require a certain rule, any preference it may show is "permissive rather than mandatory." *Peter-Palican v. Commonwealth,* 673 F.3d 1013, 1021 (9th Cir. 2012).

1    Most of the CNMI cases on limitation of actions other than *Zhang* do not shed light on

2    the questions presented by Soloviev. *See Bank of Saipan v. Carlsmith Ball Wichman Case &*

3    *Ichiki,* 1999 MP 20 (legal malpractice subject to six-year statute of limitations); *Century Ins. Co.,*

4    *Ltd. v. TAC Intl. Constructors, Inc.,* 2006 MP 10 (accrual of contractual indemnity claim); *New*

5    *Shintani Corp. v. Quitugua,* 2011 MP 9 (affirmative pleading of facts for statute-of-limitations

6    exception). One case, however, stands out. In *Board of Trustees of the Northern Mariana Islands*

7    *Retirement Fund v. Ada,* 2012 MP 10, the Commonwealth Supreme Court was called upon to

8    determine the accrual date of a claim to enforce rights under a pension fund. Nowhere in *Ada* did

9    the court mention *Zhang*, which had been decided the previous year, or the *Dillon* rule. To

10   resolve the question, the court surveyed accrual rules from other jurisdictions specific to

11   enforcement of pension rights. *Ada,* 2012 MP 10 ¶ 30. It determined that Ada's claim for

12   "double-dipping" benefits accrued, not when he became eligible for those benefits upon

13   reemployment with the Commonwealth in 2000, but when he received a letter from the fund

14   after his second retirement in 2008 describing his entitlement to retirement benefits which did

15   not mention double-dipping benefits. *Id.* ¶ 31. Among the factors the court considered was when

16   Ada should reasonably have known that the fund had denied him those benefits. "[W]here no

17   rules or regulations governed the payment of double-dipping benefits, and where Ada was not

18   informed orally or in writing that upon reemployment with the Commonwealth he had six years

19   to file a claim, the Fund's failure to voluntarily pay Ada double-dipping benefits when he was re-

20   hired in 2000 did not clearly repudiate his right to the benefits." *Id.* The reasoning and holding in

21   *Ada* indicate that if presented with a close question about accrual of a medical-malpractice claim,

22   the Commonwealth Supreme Court would examine other states' rules specific to malpractice

23

24                                                    7

1    claims and adopt one that delays accrual or tolls the limitations statute until some point later than

2    the date of the negligent act (the date Markoff pulled Soloviev's tooth).

3          This position is consistent with the longstanding trend toward adoption of discovery

4    rules, as Soloviev has noted. By the mid-1980s, most jurisdictions had adopted some version of

5    the discovery rule in medical-malpractice cases. *See, e.g., Roberts v. Southwest Community*

6    *Health Services,* 837 P.2d 442, 449 (N.M. 1992) ("The great weight of authority, both in

7    decisions and commentary, today recognizes some form of the 'discovery rule'"); *Ruth v. Dight,*

8    453 P.2d 631, 664 (Wash. 1969), *superseded by statute as stated in 1000 Virginia Ltd. P'ship v.*

9    *Vertecs Corp.,* 146 P.3d 423 (Wash. 2006) ("The problem of applying the statute of limitations

10   correctly in medical malpractice cases has been a vexing one and a continuing source of judicial

11   uncertainty."). Where state courts have declined to adopt a discovery rule, the state's statute of

12   limitations for medical-malpractice claims unambiguously imposed the occurrence-of-injury rule

13   and "could not reasonably be construed as a discovery rule." *Jones v. Cloyd,* 534 N.E.2d 257,

14   259 (Ind. App. 1989) (construing Indiana statute that stated no medical-malpractice claim may

15   be brought "unless filed within two (2) years from the date of the alleged act, omission or

16   neglect"). The CNMI's statutory language ("within two years after the cause of action accrues,"

17   7 CMC § 2503) does not unambiguously point to either the occurrence date or the discovery date

18   as the moment when a cause of action accrues. It is up to the Commonwealth Supreme Court to

19   make that determination, and *Ada* indicates it would apply the majority rule and avoid the harsh

20   result that a rigid application of the occurrence rule would have for plaintiffs who could not

21   reasonably be charged with knowledge that they had been harmed until sometime after the

22   injury.

23

24

3.      *Rules Extending Accrual of Medical-Malpractice Claims Beyond the Date of Injury*

Which discovery rule or tolling mechanism would the Commonwealth courts adopt? In the absence of controlling authority, "a federal court sitting in diversity must use its own best judgment in predicting how the state's highest court would decide the case." *Takahashi v. Loomis Armored Car Service,* 625 F.2d 314, 316 (9th Cir. 1980). Neither *Ada* nor other CNMI cases are much help. If the answer to that question might determine the outcome of this lawsuit, the best course may be to certify the question to the Commonwealth Supreme Court.[2] However, if the lawsuit was timely brought within the limitations period by *any* possible accrual date other than November 2, 2011 – the date of Markoff's alleged negligent act – then certification will not be necessary. To make this determination, "well-reasoned decisions from other jurisdictions" may be consulted. *Takahashi,* 625 F.2d at 316.

a.      Continuous treatment rule

Sometimes, after a doctor has treated a patient ineffectively – say, by misdiagnosing an illness, prescribing the wrong medication, or bungling an operation – the patient goes back to that same doctor complaining of pain and continues in treatment with him or her for some period of time. When the symptoms do not abate or even get worse, the continuous treatment is terminated and the patient goes elsewhere for answers. A number of states have determined that in such circumstances, a cause of action against the doctor does not accrue until the course of treatment ends. In theory, the continuous-treatment rule should reduce the number of malpractice actions by giving the physician a reasonable amount of time to correct errors made early in the

---

[2] The Northern Mariana Islands Supreme Court Rules permit a federal court to certify a question of Commonwealth law if it finds that "(1) The question may be determinative in the proceedings before it; and (2) There is no controlling precedent in the decisions of [the Commonwealth Supreme] Court." NMI Sup. Ct. R. 13(a).

course of treatment, and by not forcing patients to sue at the first sign of dissatisfaction lest the cause of action be time-barred. *See, e.g., Williams v. Elias,* 1 N.W.2d 121, 124 (Neb. 1941); *Grubbs v. Rawls,* 369 S.E.2d 683, 686 (Va. 1988); *Anderson v. George,* 717 A.2d 876, 877 (D.C. App. 1998).

However, not all continuous-treatment rules are alike. In West Virginia, for example, the rule does not apply when the injury was from a negligently performed surgical procedure whose date is precisely known and the postsurgical treatment itself was not negligent. *Forshey v. Jackson,* 671 S.E. 2d 748, 757 (W.V. App. 2008) (holding continuous-treatment rule not applicable where scalpel blade was left inside patient's hand). Under the West Virginia rule, the cause of action accrues on the last date of treatment only if "due to the continuous nature of the treatment [the patient] is unable to ascertain the precise date of the injury[.]" *Id..* The same is true in Minnesota. *Offerdahl v. Univ. of Minnesota Hosp. and Clinics,* 426 N.W.2d 425, 428–29 (Minn. 1988). In Wyoming, however, the rule applies even if the injury arose from a single negligent act and the ensuing treatment was not negligent. *Nobles v. Memorial Hosp. of Laramie County,* 301 P.3d 517, 527–29 (Wyo. 2013) (declining to adopt single-act exception to continuous-treatment rule).

If the continuous-treatment rule applies without exception, Soloviev's claim appears not to be time-barred, as he continued in treatment with Markoff until September 2012, within two years of commencing this action. However, if the single-act exception applies, Soloviev is out of time, as his injury stems from a discrete act (the tooth extraction) performed on a known date more than two years before he filed suit.

Moreover, although a majority of jurisdictions have adopted some form of the

continuous-treatment rule, others have rejected it. "In some jurisdictions, the continuing treatment doctrine has not been judicially adopted as to a medical malpractice claim for various reasons." 61 Am. Jur. 2d *Physicians, Surgeons, Etc.* § 302 (2012) (citing case law from Georgia, Pennsylvania, and South Carolina).

b.    Discovery rule

In some states, the statute of limitations begins to run, not when the tort was committed and the injury sustained, but when the plaintiff became aware, or reasonably should have become aware, of his or her injury or its cause. The discovery rule, like the continuous-treatment rule, has enjoyed widespread acceptance. *See* 61 Am. Jur. 2d *Physicians, Surgeons, Etc.* § 303 (2012). In the 1960s, the momentum was in that direction. *See Wilkinson v. Harrington,* 243 A.2d 745, 751 (R.I. 1968) (noting that "the trend in this country seems to be moving toward the acceptance of the discovery rule" and adopting same); *Burns v. Bell,* 409 A.2d 614, 616–17 (D.C. App. 1979) ("The majority of states . . . employ the discovery rule to decide when a cause of action accrues in a medical malpractice action."). Those few jurisdictions that have not adopted it and maintain the occurrence-of-injury rule have allowed exceptions. *See Giles v. Sanford Memorial Hosp. and Nursing Home,* 371 N.W.2d 635 (Minn. App. 1985) (continuous-treatment exception); *Schmiedt v. Loewen,* 789 N.W.2d 312 (S.D. 2010) (continuous-tort exception); *Chalifoux v. Radiology Assocs. Of Richmond, Inc.,* 708 S.E.2d 834 (Va. 2011) (continuous-treatment exception); *see also* Me. Rev. Stat. Ann. tit. 24, § 2902 (2013) (foreign-object exception).

The scope of the discovery rule, however, depends on how it is formulated. Iowa provides a good example. In 1974, the Iowa Supreme Court held that in medical-malpractice actions, the statute of limitations "does not begin to run until the injured person knows or can be

11

charged with knowledge of the existence of his cause of action." *Baines v. Blanderman,* 223 N.W.2d 199, 202 (Iowa 1974). In *Baines,* the plaintiff lost vision in his right eye after surgery to repair a herniated disc. *Id.* at 200. Doctors reassured him that his vision would return in a few months. *Id.* at 201. When it didn't, he consulted another doctor, who told him the surgery may have cut off the blood supply to the eye and caused permanent damage. *Id.* The court found that the cause of action did not necessarily accrue at the time of the injury — i.e., the date of the disc surgery — and it would be up to the trier of fact to determine how long the plaintiff was "excusably unaware of his cause of action[.]" *Id.* at 203. One year after *Baines,* the Iowa legislature amended its limitations statute to provide that medical-malpractice actions accrue upon discovery of the injury, not the cause of action. *See Schlote v. Dawson,* 676 N.W.2d 187, 191–92 (Iowa 2004) (citing Iowa Code § 614.1(9) (2001)). Construing that amendment, the Iowa Supreme Court held that a malpractice claim arising from the needless removal of the plaintiff's voice box accrued when the voice box was removed, not when the plaintiff learned that more conservative treatment should have been offered that would have saved his voice. *Id.* at 194.

Soloviev asserts that the true common-law discovery rule is the discovery-of-claim rule in *Baines,* and that *Schlote,* which merely construes a statute, is irrelevant. (Opp. 2–3.) And yet the discovery-of-injury rule adopted by the Iowa legislature, as recognized in *Schlote,* has support at common law – in particular, federal common law. The Federal Tort Claims Act bars claims not brought "within two years after such claim accrues," 28 U.S.C. § 2401(b), but doesn't define "accrue." In a medical-malpractice case, the Supreme Court determined that federal tort claims accrue when a plaintiff becomes aware of "his injury and its cause," not when "he knows or should suspect that the doctor who caused his injury was legally blameworthy[.]" *United*

*States v. Kubrick,* 444 U.S. 111, 121 (1979). Once a plaintiff "is in possession of the critical facts that he has been hurt and who has inflicted the injury," the cause of action accrues, even if he does not yet know that he has been wronged. *Id.* at 122; *see also Motley v. United States,* 295 F.3d 820, 822 (8th Cir. 2002) ("Knowing the cause and existence of an injury is not the same as knowing that a legal right has been violated.") (claim accrued when parents of stillborn first suspected health center's prenatal care caused fetus's death).

The viability of Soloviev's claim may depend on which discovery rule is applied. Under the discovery-of-injury rule, perhaps Soloviev should have known he was injured when he first developed severe pain soon after the extraction. The federal common-law rule would yield the same result, as Soloviev would certainly know that the extraction was the cause of his pain. But if accrual takes place upon discovery of a cause of action, the limitations period may have commenced as late as September 2012, when Soloviev was examined by Edranoff. The outcome of the case, if it were to go to trial, may depend on which discovery rule the jury is instructed to apply to the facts it finds.

c.     Foreign-object rule

Soloviev asserts that the Commonwealth would apply the rule that when an injury is caused by a foreign object having been negligently left in the body after surgery, the claim accrues upon discovery of the object's presence. (Opp. 7–8.) He points out that when Maine's Supreme Judicial Court instituted the rule in 1982, it observed that it had been adopted in the "overwhelming majority of jurisdictions," sometimes "in the face of legislative silence[.]" *Myrick v. James,* 444 A.2d 987, 996 and n.9 (Me. 1992), *superseded by statute as noted in Choroszy v. Tso,* 647 A.2d 803, 806–7 (Me. 1994).

The foreign-object rule has indeed gained general acceptance across the country. "Where a malpractice claim is based upon leaving a foreign substance, such as gauze, sponges, or surgical clamps, in a patient's body, the statute of limitations generally runs not from the date of the practitioner's wrongful act or omission but from the time when the act of malpractice with resulting injury is, or by reasonable diligence could be, discovered by the patient." 61 Am. Jur. 2d *Physicians, Surgeons, Etc.* § 304 (2012). The purpose of the rule is to "avoid[] the unseemly possibility that plaintiffs who suffer post-operative complications but who are unaware of the cause of those complications will initiate a malpractice action against the surgeon merely to preserve the availability of a remedy." *Myrick,* 444 A.2d at 996 n.10.

The history of the rule is instructive. In the early twentieth century, courts found that an operation could not be said to have concluded, and the surgeon's duty of care discharged, until "all the appliances necessary to the successful operation have been removed from the body." *Akridge v. Noble,* 41 S.E. 78, 81 (Ga. 1902); *see also Barnett's Adm'r v. Brand,* 177 S.W. 461, 464 (Ky. 1915). From this observation, it was deduced that when a foreign object was left in the body and the patient continued under the surgeon's treatment, the cause of action did not accrue until the object was removed. *See, e.g., Sly v. Van Lengen,* 198 N.Y.S. 608, 610 (1923); *Huysman v. Kirsch,* 57 P.2d 908, 912 (Cal. 1936) (surgeon's negligence continued until removal of drainage tube left in place too long). By the 1960s, some courts were developing an exception for discovery of foreign objects independent of the continuous-treatment rule. *See, e.g., Billings v. Sisters of Mercy of Idaho,* 389 P.2d 224, 232 (Idaho 1964) (finding that occurrence-of-injury rule of accrual was no longer majority rule and adopting foreign-object discovery exception); *Morgan v. Grace Hospital, Inc.,* 144 S.E.2d 156, 161 (W.V. 1965) (extending discovery rule to

14

1   actions "in which a plaintiff alleges that a foreign object was negligently left in his or her body

2   following a surgical operation"); *accord Gaddis v. Smith,* 417 S.W.2d 577, 580 (Tex. 1967),

3   *superseded by statute as stated in Walters v. Cleveland Reg'l Med. Ctr.,* 307 S.W.3d 292 (Tex.

4   2010). The justification was that policy considerations barring stale and fraudulent claims "are

5   not present in a foreign object case." *Billings,* 389 P.2d at 231. The trend, by this time, was

6   toward adopting a separate accrual rule where, by no lack of diligence on the plaintiff's part, a

7   foreign object went undiscovered for many years after the date of the surgery. *See Morgan,* 144

8   S.E.2d at 162 (noting "a distinct and marked trend in recent decisions of appellate courts

9   throughout the nation"); Stanley Sacks, *Statutes of Limitations and Undiscovered Malpractice,*

10  16(1) CLEV. ST. L. REV. 65, 69 (1967) (noting split in authority but indicating "a definite trend

11  toward a fair rule"). By the 1980s, the trend had become the norm. *See Myrick,* 444 A.2d at 996.

12          Defendants' response to all these discovery rules is the same: while a great many

13  jurisdictions have adopted them, the CNMI has not. (Reply 6.) In the face of legislative silence,

14  courts should not speculate as to what the Commonwealth legislature intended to do. *See Bank of

15  Saipan,* 1999 MP 20 ¶8. And yet *Ada* shows that as to accrual of particular kinds of actions, in

16  the face of legislative silence the Commonwealth Supreme Court is open to considering the

17  spectrum of rules adopted by various jurisdictions and is not limited to the traditional common-

18  law rule.

19          There is no controlling authority in the CNMI as to when a cause of action for medical

20  malpractice accrues, or under what circumstances the running of the two-year statute of

21  limitations for such actions may be tolled. From the approach the Commonwealth Supreme

22  Court took to an accrual question in *Ada,* and on the basis of well-reasoned decisions from the

23

24                                                 15

vast majority of jurisdictions as noted in the RESTATEMENT, it can be predicted with confidence that for medical-malpractice claims the CNMI's highest court would fashion some sort of relief from the traditional rule that a tort claim accrues at the time of injury. But without any Commonwealth cases on accrual of medical-malpractice claims to serve as a guide, the precise outlines of that relief – be it adoption of a discovery rule (which one?) or tolling for continuous treatment (in what circumstances?) – cannot reasonably be predicted. It has been said that "absent a close question of state law or a lack of state guidance, a federal court should determine all the issues before it." *Anderson v. Hess Corp.,* 649 F.3d 891, 895 (8th Cir. 2011). Here, the question is close, and Commonwealth case law provides hardly any guidance.

*Except* for the foreign-object rule. The widespread acceptance of that rule is a strong predictor that the Commonwealth Supreme Court would adopt it. The fact the Commonwealth legislature has expressly delayed accrual when a tortfeasor fraudulently concealed an injury, *see* 7 C.M.C. § 2509, does not necessary mean it intentionally omitted a tolling rule peculiar to medical-malpractice claims, as other courts have found when they considered that argument with respect to their own state's statute. *See Berry v. Branner,* 421 P.2d 996, 310 (Ore. 1966); *Christiansen v. Rees,* 436 P.2d 435, 436 (Utah 1968). Moreover, although courts sometimes struggle to define what is and isn't a foreign object for purposes of the rule,[3] the rule itself does not vary substantially from jurisdiction to jurisdiction. The common-law rule, as generally understood and applied in the United States, is that the action accrues when the foreign object is discovered.

---

[3] For example, does an intrauterine device become a foreign object when it is negligently left in place but should have been removed? Maybe yes, *Schmiedt v. Loewen,* 789 N.W.2d 312 (S.D. 2010); maybe no, *Rodriguez v. Manhattan Medical Group, P.C.,* 567 N.E.2d 235 (N.Y. 1990).

16

In making this determination, the Court is mindful that neither party has asked to certify the accrual question to the Commonwealth Supreme Court. At oral argument, Defendants indicated that if this action survives the motion to dismiss, they may eventually request certification of this and other questions that may arise as the litigation develops. In their view, to certify a question at this stage would be premature. For the reasons already stated, the Court agrees with that assessment. Certification may ultimately be appropriate if the question of accrual of malpractice claims will be dispositive, because the issue is likely to recur in other cases and there is no clear controlling precedent. *See Brown v. Argosy Gaming Co., L.P.,* 384 F.3d 413, 417–18 (7th Cir. 2004) (discussing factors bearing on whether district court should certify question to state supreme court); *see also Peter-Palican,* 673 F.3d at 1017–21 (certifying question upon appellant's request and where federal court has "little way of knowing" how Commonwealth court would decide important issue).

Because this Court concludes that the foreign-object rule applies, and because it cannot be reasonably predicted when a medical-malpractice action accrues under CNMI law, it is not apparent on the face of the complaint that the statute of limitations has run. For that reason, Defendants' motion to dismiss the action as barred by the statute of limitations must be denied.

That said, it would not be surprising if the accrual question returns in a future motion for summary judgment or dispute over jury instructions. The complaint does not identify the "foreign substance" that was "found to be lodged in [Soloviev's] sinus." (Comp. ¶ 22.) The allegation that Markoff "allowed the foreign material to get into [Soloviev's] sinus" (*id.* ¶ 35) suggests that the material wasn't a surgical implement or swab (the usual "foreign object" to which the rule applies) intentionally introduced into the body and negligently left there, but

something that got into the surgical site by accident. If, after the parties have engaged in discovery, it's clear that the "foreign material" is a foreign object within the meaning of the rule, there may be no need to determine all the contours of accrual under CNMI law. But if it turns out not to be a piece of gauze or cotton but, say, a tooth fragment[4] or misplaced suture,[5] the foreign-object rule may not apply, and Soloviev may need to rely on a discovery rule or continuous-treatment rule to avoid timing out. In that event, a question or questions may need to be certified to the Commonwealth Supreme Court.

B.    Tolling of the Statute of Limitations Because of Fraudulent Concealment Does Not Need to Be Pled With Particularity

The Commonwealth Code recognizes fraudulent concealment as grounds to toll the statute of limitations. "If any person who is liable to any action shall fraudulently conceal the cause of action from the knowledge of the person entitled to bring it, the action may be commenced at any time within the time limits within this chapter . . . after the person who is entitled to bring the same shall discover or shall have had reasonable opportunity to discover that he has such cause of action, and not afterwards." 7 CMC § 2509.

Soloviev alleges that Defendants "concealed from [Soloviev] that they had caused a fistula and allowed the foreign material to get into his sinus." (Compl. ¶ 35.) He also alleges that they "falsely report[ed] in their records that they had located and removed [a foreign body]." (Compl. ¶ 17.) In his Opposition, Soloviev asserts that whether Defendants actually fraudulently concealed the cause of action, so as to toll the statute of limitations until Dr. Edranoff found the foreign object, is a fact question and cannot be determined on a motion to dismiss. (Opp. 10.)

---

[4] *See Morris v. Dentfirst, P.C.,* 727 S.E.2d 515 (Ga. App. 2012) (declining to decide if tooth fragment is foreign object, because in any event plaintiff's complaint was filed out of time).

[5] "*See Rockefeller v. Moront,* 618 N.E.2d 119 (N.Y. 1993) (misplaced suture not foreign object).

1    Defendants observe that Plaintiff has not pleaded fraudulent concealment as an

2 affirmative defense to toll the statute. (Reply 8.) They assert that Commonwealth law, as

3 announced in *New Shintani Corp. v. Quitugua,* 2011 MP 9 (N. Mar. I. 2011), requires that

4 exceptions to the statute of limitations be pleaded. (Reply 8–9.)

5    Defendants misread *New Shintani.* In that case, the Commonwealth Supreme Court held

6 that a plaintiff must affirmatively plead "facts establishing an exception," not the exception itself.

7 *New Shintani,* 2011 MP 9 ¶¶ 1, 13. In *New Shintani,* the plaintiff asserted at trial that the statute

8 of limitations was tolled when the defendant departed the Commonwealth,[6] but the critical fact

9 that the defendant had left during the limitations period was not alleged in the complaint. In

10 contrast, Soloviev's complaint alleges facts that would show Markoff had concealed that he had

11 left a foreign object in the extraction site.

12    In addition, Defendants assert that fraudulent concealment as a defense to the statute of

13 limitations must, like any claim of fraud, be pleaded with particularity. (Reply 11.) Defendants

14 cite to no cases that stand for this proposition. The general rule across jurisdictions appears to be

15 that a fraudulent-concealment defense, unlike a fraud claim, is not subject to the particularity

16 requirement of Rule 9(b) of the Federal Rules of Civil Procedure. See *Coleman v. Conseco, Inc.,*

17 238 F. Supp. 2d 804, 813 (S.D. Miss. 2002), *abrogated on other grounds as recognized by*

18 *Sweeney v. Sherwin Williams Co.,* 304 F. Supp. 2d 868 (S.D. Miss. 2004); *Floyd v. Koenig,* 274

19 S.W.3d 339, 341 (Ark. App. 2008); *Spoljaric v. Pangan,* 466 N.E.2d 37, 39 (Ind. App. 1984);

20 *see also Molineaux v. Reed,* 532 A.2d 792, 794 (Pa. 1987) (holding that to toll statute of

21

22 ──────────────
[6] "If, after a cause of action accrues against a person, that person departs from and resides out of the
23 Commonwealth, the time of absence shall be excluded in determining the time limit for commencement
of the action." 7 CMC § 2508.

24                                    19

1    limitations because of fraudulent concealment, "defendant's conduct need not rise to fraud or

2    concealment in the strictest sense, that is, with an intent to deceive; unintentional fraud or

3    concealment is sufficient"). The arguments in favor of applying Rule 9(b) to fraudulent-

4    concealment defenses were thoroughly considered and persuasively rejected in *Hoppe v.*

5    *SmithKline Beecham Corp.,* 437 F. Supp. 2d 331 (E.D. Pa. 2006). There, the district court

6    reasoned that the concealment defense, unlike a fraud claim, may be based on even an

7    unintentional deception, and that it is "axiomatic that a plaintiff need not anticipate a statute of

8    limitations defense in his complaint." *Id.* at 337 n.5.

9         Here, facts indicating that Defendants fraudulently concealed their negligence have been

10   pleaded. For these reasons, Soloviev does not have to meet the requirements of Rule 9(b) in

11   order to maintain that fraudulent concealment tolled the statute of limitations.

12       C.    The Consumer Protection Act Excludes Medical Malpractice Claims But Allows
              Claims for Fraudulent Billing by Medical Practitioners

13

14        Defendants assert (Memo. 7–10) that as a matter of public policy, dental-malpractice

15   claims cannot be recharacterized as violations of the Consumer Protection Act (CPA) in order to

16   escape the two-year statute of limitations and shelter under the CPA's four-year limitations

17   period, as established at 4 CMC § 5110. They cite numerous cases across jurisdictions that hold

18   that CPA claims may apply only to the business and entrepreneurial aspects of the provision of

19   medical services, such as fraudulent billing. Plaintiff responds (Opp. 17–18) that medical and

20   dental providers are not expressly exempted from the CPA, and the legislature could have

21   exempted them if it so intended, just as it exempted government agencies and media outlets (*see*

22   4 CMC § 5106).

23        Defendants' position is persuasive. The general rule that the CPA doesn't cover medical-

24

1    malpractice claims is grounded in sound reasoning. The CPA's purpose is to protect consumers

2    "from abuses in commerce" (4 CMC § 5102(a)(2)) that "create an unhealthy climate for

3    business" (4 CMC § 5106(a)(3)), and to end "practices by merchants which deceive, mislead, or

4    confuse the consumer" (4 CMC § 5102(b)(1)). Suits for negligence do not further those

5    purposes. Negligent performance is not deceptive, misleading, and confusing. *See Haynes v.*

6    *Yale-New Haven Hosp.,* 699 A.2d 964, 972 (Conn. 1997) ("We conclude that professional

7    negligence—that is, malpractice—does not fall under [the CPA]. Although physicians and other

8    health care providers are subject to [the CPA], only the entrepreneurial or commercial aspects of

9    the profession are covered . . .").

10   Also, professions are typically exempted from the CPA because professional malpractice

11   is already highly regulated by other laws. *See Gadson v. Newman,* 807 F. Supp. 1412, 1417–18

12   (C.D. Ill. 1992). That is so in the CNMI. *See* N. Mar. I. Admin. Code § 140.50.1-401 *et seq.*

13   Dentists, like other health-care professionals, are subject to discipline for, among other causes,

14   malpractice. *Id.* § 140.50.1-122(d).

15   For these reasons, the allegations of malpractice and failure to adhere to professional

16   standards made in paragraphs 39–41 and 42(a) through (d) of the complaint will be stricken.

17   Plaintiff's CPA claim also includes allegations of fraudulent billing. (Compl. ¶¶ 42(3),

18   43.) These allegations are vague and conclusory. Defendants assert that Rule 9(b)'s requirement

19   that the circumstances of fraud be stated with particularity applies to Plaintiff's allegations of

20   fraudulent billing. (Memo. 11.)

21   Courts are split on whether Rule 9(b) applies to CPA fraudulent-billing claims. *See, e.g.,*

22   *Duran v. Clover Club Foods Co.,* 616 F. Supp. 790, 793 (D. Colo. 1985) (special pleading

23

24                                                   21

required); *Gonzalez v. Pepsico, Inc.,* 489 F. Supp. 2d 1233, 1247 (D. Kans. 2007) (required); *Vernon v. Qwest Comm'ns Intern., Inc.,* 643 F. Supp. 2d 1256 (W.D. Wash. 2009) (required only if intent to deceive is alleged or allegations mirror fraud elements); *In re OnStar Contract Litig.,* 600 F. Supp. 2d 861, 867–68 (E.D. Mich. 2009) (not required); *Pelman ex rel. Pelman v. McDonald's Corp.,* 396 F.3d 508, 511 (2d Cir. 2005) (not required under New York's CPA). There is no CNMI case law on whether fraudulent billing must be specially pleaded.

Soloviev has offered to "provide the billings and records referenced in the complaint or ask leave of the court to amend to attach them as exhibits." (Opp. 18.) Without deciding whether Rule 9(b) applies, the Court will accept the offer. Soloviev may amend the complaint to attach such exhibits, as well as to add more facts in the body of the complaint. If after amendment Defendants believe that fraudulent billing still has not been pleaded with particularity, they may renew the motion.

## V. CONCLUSION

For the reasons set forth above, the Court GRANTS IN PART AND DENIES IN PART Defendants' Motion to Dismiss (ECF No. 4), and orders as follows:

(1) The Motion is denied with respect to Soloviev's negligence claim (dental malpractice).

(2) The Motion is granted with respect to allegations of malpractice as violations of the CNMI's Consumer Protection Act, and denied <u>without prejudice</u> with respect to allegations of fraudulent billing.

(3) Plaintiff Soloviev is given leave to amend the complaint, <u>no later than 14 days from the date of this order</u>, by attaching exhibits and by pleading additional facts in support of

1    allegations of fraudulent billing within his claim of a violation of the CNMI's Consumer

2    Protection Act.

3            SO ORDERED this 13th day of April, 2015.

4

5                                                    _____
                                                     RAMONA V. MANGLONA
6                                                    Chief Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24